UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP - 2 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

JURY ACTION

| | |
|---|---|
| **ANDRE NOISETTE,**<br>**596 Southwest**<br>**Lake Charles Circle**<br>**Port St. Lucie, FL 34986**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TIMOTHY GEITHNER,**<br>**Secretary of the Treasury**<br>**1500 Pennsylvania Ave., NW,**<br>**Washington, D.C. 22020,**<br><br>**Defendant.** | Case: 1:11-cv-01594<br>Assigned To : Roberts, Richard W.<br>Assign. Date : 9/2/2011<br>Description: Employ. Discrim. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

1.) This is an action by Andre Noisette, who served as an accomplished and highly regarded white collar law enforcement agent in the Criminal Investigation Division ("CID") of the Internal Revenue Service ("IRS") until his retirement on October 10, 2010. Mr. Noisette is an African-American male who engaged in protected EEO activity. The subject matter of this suit is defendant's discrimination and retaliation toward Mr. Noisette, when the agency revoked his selection for the position of Supervisory Special Agent ("SSA") in the CID Tampa/St.

Petersburg field office, and then passed over Mr. Noisette for the same position after re-opening the selection process.[1]

2.) Mr. Noisette served with the IRS since 1983 in white collar law enforcement, when he joined as an Internal Revenue agent; after which he quickly became a special agent. Mr. Noisette rapidly advanced within the agency, earning outstanding ratings, performance bonuses, and the respect of his colleagues. He has successfully held numerous management positions including SSA and Senior Regional Analyst.

3.) In the spring of 2006, as the Senior Regional Analyst for the CID Mid-Atlantic Area, Mr. Noisette actively participated in the resolution of an administrative EEO pre-complaint of Sarah Peebles, an African American junior CID agent. Mr. Noisette's direct supervisor, Tyrone G. Barney, was the senior management official responsible for the resolution of Ms. Peebles complaint, and directed Mr. Noisette to take the lead in gathering and assembling information to determine whether Ms. Peebles had been discriminated against, which he found.

4.) Based on the results of Mr. Noisette's review, Mr. Barney reached a written settlement agreement with Ms. Peebles

---

[1] This action is the follow-on suit to <u>Noisette v. Paulson</u>, Civ. Action No. 08-2237 (RWR), which was dismissed without prejudice pending plaintiff's exhaustion of administrative remedies before the Office of Federal Operations of the Equal Employment Opportunity Commission, which he has now done. ECF # 17, #22.

and arranged for the dismissal of her pre-complaint. After doing so, CID subjected both Mr. Noisette and Mr. Barney to retaliation. CID's retaliation against Mr. Barney for his role in the Peebles EEO matter as well as its other discriminatory actions toward him were the subjects of Barney v. Paulson, Civ. Action No. 08-0896 (CKK).

5.) Two actions by defendant, both of which were discriminatory and retaliatory, comprise the subject matter of this suit. The first, which occurred on or about October 10, 2006, was CID's revocation of Mr. Noisette's selection for the SSA position in the Tampa/St. Petersburg field office, after announcing his selection and authorizing payment of his relocation expenses.

6.) The second occurred on or about October 23, 2006, when, after being advised to participate in the selection process for the SSA position in Tampa/St. Petersburg for a second time, Mr. Noisette was not selected.

7.) This case seeks redress for defendant's discrimination and retaliation toward Mr. Noisette in revoking its selection of him for the CID SSA position in Tampa/St. Petersburg and then not selecting him for the same position when the selection process was re-opened. The case arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 and seeks: a.) declaratory, injunctive, and other equitable relief;

b.) backpay from the date of Mr. Noisette's de-selection on or around October 10, 2006, to his selection for his last position with CID; c.) compensatory damages; and d.) an award of attorneys' fees and costs incurred in the prosecution of this action and the administrative processes which preceded it.

## Parties, Jurisdiction, and Venue

8.) Plaintiff Andre Noisette is a CID management official, who served the IRS in white collar law enforcement for over twenty-five years. Mr. Noisette is an African-American male who participated in the administrative EEO complaints process in the resolution of a CID employee's administrative complaint before the actions which underlie this suit. Mr. Noisette resides at the address recited in the caption of this complaint.

9.) Defendant Timothy Geithner is the Secretary of the Treasury, the Cabinet official who heads the Department of the Treasury, and is sued in his official capacity only. The Internal Revenue Service is a bureau of the Department of the Treasury, and, among other matters, is responsible for administering the Internal Revenue Code and federal tax laws and regulations and for collecting federal taxes. The Criminal Investigation Division is a part of the IRS and investigates potential criminal violations of the Internal Revenue Code and federal tax laws.

10.) Jurisdiction of this Court is based upon 28 U.S.C. § 1332, and 42 U.S.C. § 2000e-16 (incorporating by reference 42 U.S.C. § 2000e-5(c)). Venue lies here pursuant to 42 U.S.C. § 2000e-16 (incorporating by reference 42 U.S.C. § 2000-5(f)(3)), because defendant took the unlawful employment actions that are at issue in this suit in this judicial district, by and through the senior management of CID while at their duty stations in Washington, D.C.

**Statement of Facts**

**Background**

11.) Andre Noisette is an African-American male who was a special agent specializing in white collar law enforcement from 1983 until his retirement in 2010, and he engaged in protected EEO activities before the adverse employment actions and materially adverse actions that are contested in this Complaint.

12.) Mr. Noisette was a management official in the Criminal Investigation Division ("CID") of the Internal Revenue Service ("IRS"). CID is a component of the IRS and investigates, among other matters, potential criminal violations of the Internal Revenue Code and federal tax laws and regulations, money laundering statutes, and bank secrecy violations.

13.) Mr. Noisette's last position with CID was as a Supervisory Special Agent ("SSA") in the Miami field office in Florida. The SSA position is classified as an IR-04 frontline

pay band position, which is the rough equivalent of a GS-14 position. His responsibilities included management oversight and providing direction to eleven special agents and staff members. He is also charged with ensuring timely delivery of completed investigations in special program areas. He held this position since approximately July 23, 2007, until his retirement in 2010.

14.) Mr. Noisette joined the IRS as an Internal Revenue Agent in January 1983. He advanced quickly, and in 1988 became a special agent. Mr. Noisette was promoted to his first management position in 2000 as the SSA in CID's Columbus, Ohio field office, and in 2003 became the Senior Regional Analyst for the Mid-Atlantic Area, which consists of seven field offices.

15.) Mr. Noisette was the Senior Regional Analyst for the Mid-Atlantic Area for just over three years and was the Senior Regional Analyst at the time he engaged in protected EEO activity.

16.) As the Senior Regional Analyst for the Mid-Atlantic Area, Mr. Noisette was responsible for, among other things, conducting field office reviews concerning office productivity and effectiveness; employee satisfaction; customer satisfaction; and diversity needs and EEO development.

17.) Mr. Noisette's direct supervisor was Tyrone G. Barney, the former Director of CID Field Operations for the Mid-Atlantic

Area. His second line and third line supervisors, one or more of whom took the actions at issue in this Complaint, were stationed in CID Headquarters in Washington, D.C. when they took those actions, and included Rick Speir and Ken Richie, Chief and Deputy Chiefs of CID; their successor and Deputy Chief/acting Chief of CID John Imhoff; and Nancy Jardini, the former Chief of CID.

18.) Throughout his tenure with CID, Mr. Noisette's career was highlighted with outstanding ratings, performance awards, and promotions.

**Mr. Noisette's Role in the Resolution of the Peebles Complaint**

19.) In the spring of 2006, Sarah Peebles, a CID Special Agent assigned to the agency's field office in Chicago, Illinois, initiated the administrative discrimination complaints process and filed a pre-complaint. Ms. Peebles alleged that she had been subject to a hostile work environment and a number of unlawful employment actions on account of her race (African-American).

20.) Among other matters, Ms. Peebles charged that management in the Chicago field office treated her disparately; had not given her training comparable to her Caucasian counterparts; improperly caused the Treasury Inspector General for Tax Administration ("TIGTA") to open an investigation when she misplaced her password to her computer; made a number

derogatory statements that were either explicitly or implicitly racially demeaning; and otherwise subjected her to a hostile work environment.

21.) Mr. Barney, the CID Director of Field Operations for the Mid-Atlantic Area and Mr. Noisette's direct supervisor at that time, headed CID's internal investigation of the Peebles pre-complaint, beginning in March of 2006. In that role, Mr. Barney directed Mr. Noisette to investigate Ms. Peebles' allegations which included, but were not limited to, obtaining the training progress reports for all the new agents that were hired in the Chicago and Indianapolis field offices, drafting a report with his findings for Mr. Barney, and making a recommendation whether Ms. Peebles had been discriminated or retaliated against.

22.) Mr. Noisette gathered and assembled the documents that would be relied upon by Mr. Barney and CID in determining the validity of Ms. Peebles' allegations; drafted a summary of his findings; and reported to Mr. Barney that based on the records, in comparison to the other new agents; it did not appear that Ms. Peebles had been given the opportunity to succeed in the Chicago field office - her core allegations of discrimination and retaliation. Mr. Noisette reported that Ms. Peebles' training record was blank, and that she had not been given the opportunity to conduct an interview, a standard experience for a

new agent with three months of training. Mr. Noisette's role and actions in connection with the resolution of the Peebles pre-complaint were known to senior CID management officials stationed in Washington, D.C., including those identified above in paragraph 17.

23.) On March 26, 2006, Mr. Barney held a meeting to consider the disposition of Ms. Peebles' EEO pre-complaint and to discuss Mr. Noisette's findings with the Chicago field office management team. Mr. Barney directed Mr. Noisette to attend, in addition to the Special Agent in Charge ("SAC"), the Assistant Special Agent in Charge ("ASAC"), and the SSA of the Chicago field office. The Director of CID's EEO and Diversity Office and the responsible EEO Specialist were also in attendance.

24.) During the meeting Mr. Noisette presented his findings, and stated that it appeared that Ms. Peebles was treated disparately in comparison to the other new agents. Based in great part upon Mr. Noisette's findings, Mr. Barney concluded that the actions taken against Ms. Peebles were unjustified, disproportionate, and based on her race; and provided the Chicago management team with instructions on how to resolve the matter.

25.) Despite Mr. Barney's guidance and instructions, the conflict between Ms. Peebles and her local CID management continued to escalate. After being notified of the situation,

Mr. Noisette obtained Ms. Peebles' records, which corroborated the information he received. Mr. Noisette advised Mr. Barney of the situation, and Ms. Peebles' intent to file a formal complaint. In response, Mr. Barney arranged to settle Ms. Peebles' EEO pre-complaint in May 2006, by entering into a written settlement agreement on behalf of the agency that included reassigning Ms. Peebles to new management, purging her personnel files of negative records, paying a small sum for relocation expenses, and requiring the involved Chicago field office managers to participate in diversity training.

26.) On May 24, 2006, Christopher Pikelis, the ASAC of the Chicago field office who was named as one of the primary responsible management officials in Ms. Peebles' EEO pre-complaint, emailed one or more officials in CID Headquarters in Washington to D.C., and solicited their involvement in taking action against Mr. Barney and Mr. Noisette for their roles in resolving the Peebles EEO pre-complaint. Mr. Pikelis' email specifically identified Mr. Noisette and Mr. Barney for their roles in resolving the Peebles EEO pre-complaint. Mr. Pikelis' email specifically stated that he and the rest of the Chicago management team were not given the opportunity to present their side of the story and that their actions were unfairly questioned. Mr. Pikelis attached the executed settlement agreement with Ms. Peebles to the email.

27.) CID Headquarters responded to Mr. Pikelis' email by unilaterally revoking the settlement of Ms. Peebles' EEO complaint; proposing to suspend Mr. Barney for 30 days; reassigning Mr. Barney to a temporary non-management position; and finally reassigning him geographically, which led to Mr. Barney's retirement, as alleged in greater detail in Barney v. Paulson, Civ. Action No. 08-0896 (CKK). CID also took the adverse actions against Mr. Noisette that are the subjects of this suit.

**Mr. Noisette's Selection for the CID SSA Tampa/St. Petersburg Position**

28.) On August 7, 2006, vacancy announcement number 23-78-06A3C226 was posted for the SSA position in the Tampa/St. Petersburg field office. The SSA position was a pay-band position. CID employees like Mr. Noisette who were selected for this pay band position would receive a onetime 10% pay increase.

29.) Mr. Noisette submitted his application for the position on or around August 17, 2006. He met all the basic qualifications of the position and was the best qualified candidate for the position.

30.) Based on his previous management experience, and according to the CID human resources department, Mr. Noisette was eligible for the one-time 10% pay increase if he were

selected for the SSA position, even without an interview due to his previous management experience.

31.) On or around August 26, 2006, Mr. Noisette received an acknowledgment of receipt for his application. He was also notified that he was eligible for the SSA position.

32.) On or around September 18, 2006, Mr. Noisette was notified by the Special Agent in Charge of the Tampa/St. Petersburg field office, Michael Yakofsky, that he was selected for the SSA position. Shortly after, on or around September 18, 2006, Mr. Noisette was officially selected for the position.

33.) On or around September 22, 2006, the weekly CI Bulletin was published and announced that Mr. Noisette was selected for the SSA position of the Tampa/St. Petersburg field office.

34.) On or around October 10, 2006, Mr. Noisette's Authorization for Basic Moving Expenses was approved by the Director of Strategy Finance.

**CID's Revocation of Mr. Noisette's Selection for the Tampa/St. Petersburg SSA Position**

35.) One or more of the CID senior management officials in Washington, D.C., identified above in paragraph 17, revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position on or around October 10, 2006, on the false ground that Mr. Noisette could not receive the one-time 10% pay increase upon

being selected unless he interviewed during the selection process.

36.) On or around October 12, 2006, the CID officials in Washington, D.C., identified above in paragraph 17, took action to rescind CID's authorization for Mr. Noisette to incur moving expenses that had previously been authorized after his selection. These same officials further took action to have Mr. Noisette advised that if he wanted the SSA position he either needed to: (1) take a non-competitive re-assignment; or (2) competitively participate in the interview process. If Mr. Noisette took the re-assignment without being interviewed, he would not be eligible for the 10% pay increase associated with taking the position.

37.) Even if Mr. Noisette was not entitled to the 10% increase in pay unless he interviewed for the Tampa/St. Petersburg position, which he was, CID Headquarters was free to waive the competition requirement of the position.

**Mr. Noisette's Non-Selection for the**
**Tampa/St. Petersburg SSA Position**

38.) Immediately after being advised of his non-selection, Mr. Noisette was interviewed on or around October 16, 2006, for the Tampa/St. Petersburg SSA position. As before, Mr. Noisette met all the basic qualifications for the position. On or around October 23, 2006, based upon information and belief, CID senior

management officials in Washington, D.C., passed over Mr. Noisette and selected another candidate for the Tampa/St. Petersburg SSA position.

39.) Angelo Tronosco, a Hispanic special agent who, based on information and belief, had not personally engaged in protected EEO activity, was selected for the position. Mr. Tronosco had substantially less prior supervisory experience. In all relevant respects, Mr. Noisette was a superior candidate for the position than Mr. Tronosco.

**Exhaustion of Administrative Remedies**

40.) Mr. Noisette timely initiated the informal discrimination complaints process on December 5, 2007, and filed his initial formal complaint of discrimination over the revocation of his selection and his subsequent non-selection on March 22, 2008. On September 30, 2008, the Department of Treasury issued a Final Agency Decision on Mr. Noisette's formal administrative complaint.

41.) On October 29, 2008, Mr. Noisette timely filed his original appeal of the Final Agency Decision with the Office of Federal Operations ("OFO") of the Equal Employment Opportunity Commission. On November 21, 2008, Mr. Noisette filed a request with OFO to withdraw that appeal. On January 15, 2009, the Office of Federal Operations granted Mr. Noisette's request.

42.) Mr. Noisette then initiated a civil action in this Court to challenge the actions that are at issue in this Complaint, Noisette v. Paulson, Civ. Action No. 08-2237 (RWR). On March 12, 2010, the Court granted defendant's dispositive motion in that case, on the ground that by withdrawing his appeal to OFO, Mr. Noisette had not completed the administrative process before that body. ECF #17. On July 19, 2010, the Court issued an Order nunc pro tunc granting plaintiff's motion to partially alter or amend its earlier order/judgment, in order to allow Mr. Noisette to file a new Complaint, so long as he initiated the OFO appellate process by March 29, 2010, and exhausted his administrative remedies before that body. ECF #22.

43.) On March 22, 2010, Mr. Noisette timely took an appeal of the Final Agency Decision over his administrative complaint to OFO. More than one hundred and eighty days have elapsed without a decision being issued by the body.

44.) With the foregoing actions, Mr. Noisette administratively challenged all of the employment actions that he has placed at issue in this suit on a timely basis, exhausted the administrative remedies available to him, and initiated this suit within the time period prescribed in 42 U.S.C. §2000e-16(c).

**Count I**
**(Race Discrimination - Pretext)**

45.) Plaintiff repeats the allegations contained in paragraphs 1 through 44 above, as though fully set forth here.

46.) On or around August 17, 2006, Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-06A3C226. Mr. Noisette met the basic qualifications of the position, and was the best qualified candidate.

47.) Mr. Noisette was selected for the position on or around September 18, 2006.

48.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position on the pretext that Mr. Noisette could not receive the one-time 10% pay increase upon being selected unless he interviewed during the selection process.

49.) In revoking Mr. Noisette's selection for the Tampa/St. Petersburg SSA position, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's employment and his future employment opportunities, both within and outside of CID.

50.) In taking the foregoing action, defendant subjected Mr. Noisette to an adverse employment action and discriminated against him on account of his race, which is African-American.

51.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, in taking the foregoing action.

52.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count II**
**(Race Discrimination - Mixed Motive)**

53.) Plaintiff repeats the allegations contained in paragraphs 1 through 52 above, as though fully set forth here.

54.) On or around August 17, 2006, Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-06A3C226. Mr. Noisette met the basic qualifications of the position, and was the best qualified candidate.

55.) Mr. Noisette was selected for the position on or around September 18, 2006.

56.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position and thereby subjected Mr. Noisette to an unlawful employment practice, one of whose motivating factors was discriminating against Mr. Noisette on account of his race (African American).

57.) In revoking Mr. Noisette's selection for the Tampa/St. Petersburg SSA position, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's

employment and his future employment opportunities, both within and outside of CID.

58.) In taking the foregoing action, defendant subjected Mr. Noisette to an adverse employment action and discriminated against him on account of his race, which is African-American.

59.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, in taking the foregoing action.

60.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count III**
**(Retaliation - Opposition/Participation - Pretext)**

61.) Plaintiff repeats the allegations contained in paragraphs on 1 through 60 above, as though fully set forth here.

62.) In the spring of 2006, Mr. Noisette engaged in protected EEO activity by participating in the resolution of the EEO pre-complaint of CID special agent Sarah Peebles and by opposing defendant's discrimination toward Ms. Peebles.

63.) On or around August 17, 2006, Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-

06A3C226. Mr. Noisette met the basic qualifications of the position, and was the best qualified candidate.

64.) Mr. Noisette was selected for the position on or around September 18, 2006.

65.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position on the pretext that Mr. Noisette could not receive the one-time 10% pay increase upon being selected unless he interviewed during the selection process.

66.) In revoking Mr. Noisette's selection to the SSA position in the Tampa/St. Petersburg SSA position, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's employment and plaintiff's future employment opportunities, both within and outside CID, and took materially adverse actions against Mr. Noisette that would dissuade a reasonable worker from making or supporting a charge of discrimination.

67.) In taking the foregoing action, defendant retaliated against Mr. Noisette on account of his protected EEO activity, in particular Mr. Noisette's participation in the administrative discrimination complaints process of CID agent Sarah Peebles and due to his opposition to defendant's unlawful employment practices toward Ms. Peebles.

68.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42, U.S.C. § 2000e-16, by retaliating against Mr. Noisette in the manner described above.

69.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count IV**
**(Retaliation - Opposition/Participation - Mixed Motive)**

70.) Plaintiff repeats the allegations contained in paragraphs on 1 through 69 above, as though fully set forth here.

71.) In the spring of 2006, Mr. Noisette engaged in protected EEO activity by participating in the resolution of the EEO pre-complaint of CID special agent Sarah Peebles and by opposing defendant's discrimination toward Ms. Peebles.

72.) On or around August 17, 2006, Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-06A3C226. Mr. Noisette met the basic qualifications of the position, and was the best qualified candidate.

73.) Mr. Noisette was selected for the position on or around September 18, 2006.

74.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position and thereby subjected Mr. Noisette to an unlawful employment practice, one of whose motivating factors was retaliating against Mr. Noisette on account of his opposition to defendant's unlawful employment practices and his participation in the protected EEO process.

75.) In revoking Mr. Noisette's selection to the SSA position in the Tampa/St. Petersburg SSA position, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's employment and plaintiff's future employment opportunities, both within and outside CID, and took materially adverse actions against Mr. Noisette that would dissuade a reasonable worker from making or supporting a charge of discrimination.

76.) In taking the foregoing action, defendant retaliated against Mr. Noisette on account of his protected EEO activity, in particular Mr. Noisette's participation in the administrative discrimination complaints process of CID agent Sarah Peebles and due to his opposition to defendant's unlawful employment practices toward Ms. Peebles.

77.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42, U.S.C. § 2000e-

16, by retaliating against Mr. Noisette in the manner described above.

78.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count V**
**(Race Discrimination - Pretext)**

79.) Plaintiff repeats the allegations contained in paragraphs 1 through 78 above, as though fully set forth here.

80.) Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-06A3C226. Mr. Noisette met the basic qualifications of the position, and was the best qualified candidate.

81.) Mr. Noisette was selected for the position on or around September 18, 2006.

82.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position.

83.) On or around October 16, 2006, Mr. Noisette interviewed for the Tampa/St. Petersburg SSA position. As before, Mr. Noisette met the basic qualifications for the position and was the best qualified candidate.

84.) On or before October 26, 2006, defendant passed over Mr. Noisette for the SSA position on the pretext that a Hispanic man was supposedly better qualified for the position, despite the fact that Mr. Noisette was the demonstrably superior candidate.

85.) In not selecting Mr. Noisette for the position of SSA in the Tampa/St. Petersburg field office, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's employment and his future employment opportunities both within and outside of CID.

86.) In taking the foregoing action, defendant subjected Mr. Noisette to an adverse employment action and discriminated against him on account of his race, which is African-American.

87.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, in taking the foregoing action.

88.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count VI**
**(Race Discrimination - Mixed Motive)**

89.) Plaintiff repeats the allegations contained in paragraphs 1 through 88 above, as though fully set forth here.

90.) Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-06A3C226. Mr. Noisette met the basic qualifications of the position, and was the best qualified candidate.

91.) Mr. Noisette was selected for the position on or around September 18, 2006.

92.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position.

93.) On or around October 16, 2006, Mr. Noisette interviewed for the Tampa/St. Petersburg SSA position. As before, Mr. Noisette met the basic qualifications for the position and was the best qualified candidate.

94.) On or before October 26, 2006, defendant passed over Mr. Noisette for the SSA position in favor of a Hispanic man and thereby subjected Mr. Noisette to an unlawful employment practice, one of whose motivating factors was discriminating against Mr. Noisette on account of his race (African American).

95.) In not selecting Mr. Noisette for the position of SSA in the Tampa/St. Petersburg field office, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's employment and his future employment opportunities both within and outside of CID.

96.) In taking the foregoing action, defendant subjected Mr. Noisette to an adverse employment action and discriminated against him on account of his race, which is African-American.

97.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, in taking the foregoing action.

98.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count VII**
**(Retaliation - Opposition/Participation - Pretext)**

99.) Plaintiff repeats the allegations contained in paragraphs 1 through 98 above, as though fully set forth here.

100.) In the spring of 2006, Mr. Noisette engaged in protected EEO activity by participating in the resolution of the EEO pre-complaint of CID special agent Sarah Peebles and by opposing defendant's discrimination toward Ms. Peebles.

101.) Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-06A3C226. Mr. Noisette met the basic qualifications of the position, and was the best qualified candidate.

102.) Mr. Noisette was selected for the position on or around September 18, 2006.

103.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position.

104.) On or around October 16, 2006, Mr. Noisette interviewed for the Tampa/St. Petersburg SSA position. As before, Mr. Noisette met the basic qualifications for the position and was the best qualified candidate.

105.) On or before October 26, 2006, defendant passed over Mr. Noisette for the SSA position on the pretext that a Hispanic man was supposedly better qualified for the position, despite the fact that Mr. Noisette was the demonstrably superior candidate.

106.) In not selecting Mr. Noisette for the position of SSA in the Tampa/St. Petersburg field office, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's employment and his future employment opportunities, both within and outside of CID, and took materially adverse action against him that would dissuade a reasonable worker from making or supporting a charge of discrimination.

107.) In taking the foregoing action, defendant retaliated against Mr. Noisette on account of his protected EEO

activity, in particular Mr. Noisette's participation in the administrative discrimination complaints process of CID agent Sarah Peebles and due to his opposition to defendant's unlawful employment practices toward Ms. Peebles.

108.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16, by retaliating against Mr. Noisette in the manner described above.

109.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count VIII**
**(Retaliation - Opposition/Participation - Mixed Motive)**

110.) Plaintiff repeats the allegations contained in paragraphs 1 through 109 above, as though fully set forth here.

111.) In the spring of 2006, Mr. Noisette engaged in protected EEO activity by participating in the resolution of the EEO pre-complaint of CID special agent Sarah Peebles and by opposing defendant's discrimination toward Ms. Peebles.

112.) Mr. Noisette timely submitted his application for the position of CID SSA assigned to Tampa/St. Petersburg, vacancy announcement number 23-78-06A3C226. Mr. Noisette met

the basic qualifications of the position, and was the best qualified candidate.

113.) Mr. Noisette was selected for the position on or around September 18, 2006.

114.) On or about October 10, 2006, defendant revoked Mr. Noisette's selection for the Tampa/St. Petersburg SSA position.

115.) On or around October 16, 2006, Mr. Noisette interviewed for the Tampa/St. Petersburg SSA position. As before, Mr. Noisette met the basic qualifications for the position and was the best qualified candidate.

116.) On or before October 26, 2006, defendant passed over Mr. Noisette for the SSA position and thereby subjected Mr. Noisette to an unlawful employment practice, one of whose motivating factors was retaliating against Mr. Noisette on account of his opposition to defendant's unlawful employment practices and his participation in the protected EEO process.

117.) In not selecting Mr. Noisette for the position of SSA in the Tampa/St. Petersburg field office, defendant materially and adversely altered the terms, conditions, and privileges of Mr. Noisette's employment and his future employment opportunities, both within and outside of CID, and took materially adverse action against him that would dissuade a

reasonable worker from making or supporting a charge of discrimination.

118.) In taking the foregoing action, defendant retaliated against Mr. Noisette on account of his protected EEO activity, in particular Mr. Noisette's participation in the administrative discrimination complaints process of CID agent Sarah Peebles and due to his opposition to defendant's unlawful employment practices toward Ms. Peebles.

119.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16, by retaliating against Mr. Noisette in the manner described above.

120.) Defendant's violation of Mr. Noisette's civil rights caused him to suffer emotional pain, embarrassment humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**PRAYER FOR RELIEF**

Wherefore, plaintiff Andre Noisette respectfully requests that the Court enter judgment in his favor and award him the following relief.

A. An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, and restraining and enjoining defendant from further violations.

B. Backpay from October 23, 2006 until the date that Mr. Noisette was selected for the SSA position in the Miami field office on approximately July 23, 2007.

C. Compensatory damages in an amount to be determined at trial to compensate plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, and loss of enjoyment of life caused by defendant's unlawful actions.

E. The attorneys' fees and costs incurred by plaintiff.

F. Such other relief as may be just and appropriate.

**JURY DEMAND**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

Robert C. Seldon, Esq.
D.C. Bar No. 245100

Molly E. Buie, Esq.
D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, NW
Suite 200
Washington, D.C. 20004
202.393.8200

Counsel for Plaintiff